THE HOBOKEN LAND AND IMPROVEMENT COMPANY, PLAINTIFF IN ERROR, v. MICHAEL LALLY, DEFENDANT IN ERROR.

A passenger drove his horse, attached to a wagon, into the passage-way from the street to a ferry, and stopped, and, leaving the horse standing unattended and untied, went ten or twelve feet away. While he was absent the horse became startled at a noise, and ran down the bridge into the river, and was drowned. A chain which was habitually stretched across the bridge when no boat was in the slip, as a guard, at the distance of about twenty-six feet from the place where the horse stood, was not up. *Held*, that the passenger was guilty of negligence contributing to the injury, and therefore could not recover.

Error to Hudson Circuit Court.

For the plaintiff in error, *J. C. Besson.*

For the defendant in error, *M. T. Newbold.*

The opinion of the court was delivered by

THE CHANCELLOR.   The error assigned is upon a refusal to non suit.   The action was for damages sustained by Lally, the plaintiff below, in the loss of his mare and injury to his wagon and harness.   He alleged that such loss and injury were due to the negligence of the company.   The facts are as follows: on the 12th of October, 1884, Lally drove the mare, attached to the wagon by the harness, into the passage or drive-way leading from the street to the company's ferry at the foot of Christopher street, in the city of New York, intending to cross over to Hoboken upon one of the company's ferry-boats.   It was about seven o'clock in the evening, and was dark.   There was no boat in the slip.   The distance from the entrance to the outer edge of the bridge or floating dock, up to which the boat comes for a landing, is about one hundred and eighty-four feet.   At the distance of about one hundred feet from the entrance, and therefore at the distance of about eighty-four feet from the outer edge of the bridge, the

company usually, when no boat is in the slip, keeps a guard-chain stretched across the drive-way. Lally drove in and stopped the mare at a place about seventy-four feet from the entrance, and about one hundred and ten feet from the outer edge of the bridge, and about twenty-six feet from the place where the chain would have been had it been up. At the side of the drive-way, at the place where he stopped, there was a urinal closet. It appears to have been enclosed on three sides, one of which was the side next to the drive-way. After blanketing the mare he left her, and went into the closet, which was ten or twelve feet distant from the place where she stood. He did not look to see whether the chain was up. He says he thinks he could not have seen it if he had looked, it was so dark. There was no other horse in the passage-way at the time. While he was in the closet the mare started at a noise made by a person driving into the passage-way, and before Lally could reach her she went forward along the passage-way over the bridge, which was inclined downwards, into the river, and was drowned. The chain was not up. Lally says he could have driven the mare up near the urinal closet, and could have held one of the reins while he was in there, and so could have secured her safety. When he was in the closet he could not see the mare, except as he expresses it, "by turning around one or two steps." He was familiar with the passage-way. He says he had been through there more than a hundred times.

That he was guilty of contributory negligence there is no room to doubt. He left the mare untied and unattended, and went from ten to twelve feet away from her into the closet. He admits, as just stated, that he might have prevented the accident by driving her up close to the closet, and holding one of the reins, as he might easily have done. But he neglected that precaution. He relied upon the mare, that she would stand without tying, and without any attention. He says he had driven her hundreds of times, and had left her, time and again, standing outside of places into which he went to transact business, and she would not start. He did not

rely upon the chain for protection. He did not look to see whether it was up or not. He neglected every precaution. He could hardly have been more careless. In *Dudley* v. *Camden and Philadelphia Ferry Co.*, 16 *Vroom* 368, which was an action brought by Dudley to recover damages for loss of a span of horses, &c., from the defendant's ferry-boat, the plaintiff drove his horses upon the ferry-boat at Philadelphia, to cross over to Camden. He was near his horses, having just finished blanketing them, and being just about to go to their heads to stand there while crossing the river. There was usually a guard or barrier in front of the place where the horses stood. It consisted of two chains and a rope stretched across the boat a few feet above the deck. Only one chain was up, and it hung at its centre but a few inches above the deck, and therefore furnished no protection. The horses, becoming startled, rushed to the bow of the boat, and sprang, with the carriage, into the river, and were drowned. It was held in this court that the plaintiff's duty required of him to place himself, and remain in a position where he might control, or at least have the opportunity and means of exerting all possible control of his horses if startled by any of the occurrences incident to the crossing; that he should have retained the reins in hand, or within reach, or should have stood at his horses' heads; and that having done neither he was guilty of negligence which contributed to the loss of his property. In the case in hand, as in that case, the traveler retained the custody of his property himself, and called no one of the employees of the company to his assistance to secure its safety during his temporary absence. He chose to take the risk himself of leaving his horse standing wholly unguarded while he was away. One who leaves a horse unfastened and unguarded is liable for all the mischief it does in pursuance of its natural habits, and in consequence of its being thus left without guard. *Whart. on Neg.*, § 915. The judgment of the Circuit Court should be reversed.

*For affirmance*—None.

*For· reversal*—THE CHANCELLOR, CHIEF JUSTICE, DE-PUE, DIXON, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, MCGREGOR, PATERSON, WHITAKER. 15.